RESOLUTION TRUST CORP., on Behalf of FIRST LOUISIANA FEDERAL SAVINGS BANK

v.

COMMERCE PARTNERS, et al.

Civ. A. No. 90–0584.

United States District Court, W.D. Louisiana, Lafayette–Opelousas Division.

Aug. 13, 1990.

**444**

Thomas M. McNamara, Patrick W. Gray, Billy J. Domingue, Liskow & Lewis, Lafayette, La., for plaintiff.

Jeffrey Ackermann, Durio, McGoffin & Stagg, Lafayette, La., for defendants.

## RULING ON DEFENDANTS' MOTION TO COMPEL

MILDRED E. METHVIN, United States Magistrate.

This matter is before the court on defendants' motion to compel plaintiff, Resolution Trust Corporation (RTC) to answer interrogatories and to respond to a request for production of documents propounded on May 1, 1990.[1] The RTC opposes the motion.

The RTC responded to the discovery requests, but defendants contend that Interrogatory Nos. 4–18 and Request for Production No. 1 remain at issue.

## BACKGROUND

Widespread concern over the crisis in the savings and loan industry resulted in the passage of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). President Bush signed the act into law on August 9, 1989. A central feature of FIRREA was the abolishment of the FSLIC and the establishment of its successor, the RTC, to manage and resolve failed savings associations. 12 U.S.C. § 1441a(b)(1)(A). The FDIC performs all responsibilities of the RTC. 12 U.S.C. § 1441a(b)(1)(C).

This suit for recovery on a promissory note and collateral mortgage was instituted in state court by First Louisiana Federal Savings Bank (Old First Louisiana) on September 25, 1989. On November 1, 1989, the RTC was appointed receiver of Old First Louisiana for liquidation proceedings. Contemporaneously, the Office of Thrift Supervision authorized the incorporation of a new federal savings association, First Louisiana Federal Savings Bank F.A. (New First Louisiana), to take over certain assets and liabilities of Old First Louisiana. The RTC was then appointed conservator of New First Louisiana for all purposes except liquidation. New First Louisiana obtained ownership of the rights of Old First Louisiana, and substituted itself as plaintiff. Thereafter, the RTC, as conservator, substituted itself as the plaintiff and removed this matter to federal court under the provisions of 12 U.S.C. §§ 1441a(l)(1) and 1441a(l)(3).[2]

---

1. Defendants are Commerce Partners, E.M. Clark, Ronald Foreman, James Hayes, Herbert Brown, Michael Killeen, George Schneider, and Robert Walker.

2. 12 U.S.C. § 1441a(l)(1) provides: "Notwithstanding any other provision of law, any civil action, suit, or proceeding to which the Corporation is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit, or proceeding."

As conservator, the RTC is the holder and owner of the promissory note in dispute. The note was executed by Commerce Partners on September 25, 1987. Commerce Partners allegedly failed to pay the balance due on the note at maturity on September 25, 1989. The note is secured by a collateral mortgage, an assignment of lease, and continuing guarantees executed by the individual defendants.

## THE DISCOVERY DISPUTE

Defendants seek information and documents relative to three issues:

1. The validity of the RTC's appointment as conservator, and therefore its procedural capacity to sue.

2. Whether the procedures for establishing New First Louisiana as a "bridge bank" were followed (if not, defendant argues, then the RTC as conservator cannot proceed).

3. Whether the RTC's suit is a proper exercise of its statutory authority under 12 U.S.C. § 1821(h)(3) which requires procedures "to minimize adverse economic effects caused by its actions on individual debtors in the community."

Each of these issues will be discussed in turn.

### 1. The Validity of the RTC's Appointment as Conservator

■ Defendants seek information concerning whether "at least one statutory ground exists as a prerequisite to the RTC's status as Conservator."[3] Defendants argue that this information is relevant because unless the RTC's appointment was proper under relevant statutory requirements, it lacks procedural capacity to prosecute this case. In support of this argument, defendants cite Rule 17(b), which states in pertinent part:

12 U.S.C. § 1441a(*l*)(3) provides that where the RTC has been appointed conservator of an institution, "[t]he Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to ... the United States district court for the district where the institution's principal business is located * * * ".

* * * The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. * * *

Courts have allowed the use of discovery in connection with a Rule 17 objection.[4]

The RTC responds that discovery relating to the authority of the RTC to proceed with the action is precluded under 12 U.S.C. § 1464(d)(2)(G).[5] It contends that FIRREA specifically limits judicial authority to take any action that restrains or affects the exercise of the RTC's powers and functions as conservator, and that therefore discovery on this issue is not relevant.

Rule 26(b)(1) limits the scope of discovery to any matter, not privileged, which is relevant to the *subject matter* (not merely the issues) involved in the pending action. The scope of discovery is consequently broad. However, if the question of the RTC's procedural capacity to proceed in this case is statutorily foreclosed, then the discovery at issue is not relevant or permissible.

A case squarely on point was recently decided in the Eastern District of Louisiana by the Honorable George Arceneaux. *Resolution Trust Corporation v. Babovich*, 1990 WL 86479, 1990 U.S.Dist. LEXIS 7454 (E.D.La., June 19, 1990). In that case, the RTC, as conservator of a failed savings and loan association (and as successor of the FSLIC) brought suit to collect on a promissory note. Defendants challenged the original appointment of the FSLIC as conservator of the failed savings and loan association, and moved to dismiss the case. Judge Arceneaux denied the motion, finding that FIRREA provided that the exclusive means of challenging the appointment of a conservator or receiver of a failed savings association was a federal court action *by the association itself within 30 days after such appointment. See* 12 U.S.C.

---

**3.** *See* Defendants' Supplemental Memorandum, p. 12.

**4.** *See* Wright and Miller, *Federal Practice and Procedure*, § 1554.

**5.** See discussion *infra* at pp. 445–46.

1464(d)(2)(E). In connection with the defendant's motion for reconsideration, Judge Arceneaux wrote:

> The defendants ignore ... the primary reason for the Court's denial of their Motion to Dismiss: that they have no power to challenge the appointment of FSLIC as receiver or conservator for failed savings and loan institutions, such as the Association, under 12 U.S.C. §§ 1464(d)(2)(E) and (G). * * *
>
> The statute unambiguously restricts any challenge to the appointment of the conservator or receiver of a failed savings and loan to the savings and loan association itself thirty days after the appointment. Section 1464(d)(2)(G) makes Section 1464(d)(2)(E) the exclusive means to challenge any such appointment. * * *
>
> Because the defendants have no standing to challenge the conservatorship appointment in this case, they have failed, once again, to sustain their burden of proving that plaintiff cannot recover under the claims asserted in this case.

*Id.* 1990 WL 86479, 1990 U.S.Dist. LEXIS 7454 at pp. 4–5.

Judge Arceneaux's analysis is wholly supported by the statutory provisions he cites. 12 U.S.C. § 1464(d)(2)(E) provides that an association may seek the removal of a conservator by bringing an action in a federal district court within 30 days of the conservator's appointment:

> The Director shall have exclusive power and jurisdiction to appoint a conservator or receiver for a Federal savings association. If, in the opinion of the Director, a ground for the appointment of a conservator or receiver for a savings association exists, the Director is authorized to appoint ex parte and without notice a conservator or receiver for the savings association. *In the event of such appointment, the association may, within 30 days thereafter, bring an action in the United States district court for the judicial district in which the home office of such association is located, or in the United States District Court for the District of Columbia, for*

*an order requiring the Director to remove such conservator or receiver, and the court shall upon the merits dismiss such action or direct the Director to remove such conservator or receiver.* Upon the commencement of such an action, the court having jurisdiction of any other action or proceeding authorized under this subsection to which the association is a party shall stay such action or proceeding during the pendency of the action for removal of the conservator or receiver. (Emphasis added.)

12 U.S.C. § 1464(d)(2)(E). Under 12 U.S.C. § 1464(d)(2)(G), this is the exclusive means of challenging a conservator appointment:

> Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver or, except at the request of the Director, to restrain or affect the exercise of powers or functions of a conservator or receiver.

Another court has also interpreted this section of FIRREA as limiting the jurisdiction of federal courts to entertain challenges to conservator appointments. In *Shemonsky v. Office of Thrift Supervision,* 733 F.Supp. 892 (M.D.Pa.1990), the court held it had no jurisdiction to entertain the plaintiff's challenge to the appointment of the RTC as receiver of a failed savings association. The court wrote:

> ... [H]istorical as well as legal precedent has long ago established that [federal courts] are tribunals of limited jurisdiction and can only act based upon an explicit grant of authority under the Constitution and law of the United States. * * *

Under the cited authorities, defendants have no standing to challenge the appointment of the RTC as conservator in this case, nor does this court have jurisdiction to entertain such a contention.

Defendants contend that any ruling precluding discovery on the validity of the agency action in this case would constitute a grant of partial summary judgment for plaintiff, citing *Federal Deposit Insurance Corporation v. Percival,* 131 F.R.D. 166

(D.C.Neb.1990). However, *Percival* is distinguishable.

In *Percival,* the FDIC sued defendant on a loan guaranty which had been held by a failed bank. The defendant contended that the guaranty had been discharged by an accord and satisfaction with the bank, and propounded discovery on that issue. The FDIC moved for a protective order claiming that the discovery requests were irrelevant since the alleged accord and satisfaction failed to meet the requirements of federal banking law. The court denied the motion for protective order, reasoning as follows:

> In its motion for a protective order, the plaintiff is in essence asking this court to decide substantive issues in this case. A grant of this protective order under the theory propounded by the plaintiff (lack of relevance) would necessarily be a ruling that § 1823(e) bars defendant's accord and satisfaction defense. In the absence of Eighth Circuit authority on this issue and in light of the split of authority in the courts which have considered this issue, I conclude that it would be inappropriate to grant a motion for a protective order that would in essence amount to a partial summary judgment for the plaintiff. Such a ruling should come only after each party has had a full and fair opportunity to submit all relevant evidence to the court.

*Id.* at p. 170. The court's concern in *Percival* was based on the absence of clear Eighth Circuit authority barring defendant's defense under federal banking law. There is no such equivocality in the law applicable to the instant case.

The exclusive method provided by Congress for challenging the actions of a conservator in federal court is set forth in 12 U.S.C. § 1464(d)(2)(E). Defendants do not qualify under that section, and the 30–day time limit expired long ago. Consequently, the discovery as to this issue is irrelevant and impermissible.

**6.** 12 U.S.C. § 1821(d)(2)(F) provides that "The Corporation may, as receiver—(i) ... organize a new Federal savings association to take over such assets or such liabilities as the corporation may determine to be appropriate ...".

## 2. Validity of Bridge Bank Procedures

Defendants seek discovery to determine whether the procedures for establishing New First Louisiana as a "bridge bank" were followed. If not, defendant argues, New First Louisiana's existence is invalid and the RTC cannot act as conservator of an invalid entity.

The RTC responds that defendants' requests regarding the formation of a bridge bank are irrelevant, since the New First Louisiana was not chartered as a bridge bank, but as a federal savings association under 12 U.S.C. § 1821(d)(2)(F)(i).[6]

After review of the record, I conclude that New First Louisiana is not a bridge bank, and therefore the discovery requests addressed to this issue are irrelevant. Furthermore, for the reasons discussed above, I find that this court lacks jurisdiction to entertain any challenge to actions of the RTC or the FDIC absent strict statutory authorization. There is none here.

## 3. Whether the RTC has properly considered "adverse economic effects"

Defendants argue that the RTC's suit may not be a proper exercise of its statutory authority under 12 U.S.C. § 1821(h)(3), which requires procedures "to minimize adverse economic effects caused by its actions on individual debtors in the community."

As discussed above, this court lacks jurisdiction "to restrain or affect the exercise of powers or functions" of the RTC as Conservator of New First Louisiana.[7] It follows that any inquiry into the underlying reasons for the RTC's decision to proceed in this case is foreclosed.

■ Even were this a proper suit by an association under 12 U.S.C. § 1464(d)(2)(E), the deliberative process privilege would act to foreclose discovery on this issue. Under the privilege, discovery of documents re-

**7.** 12 U.S.C. § 1464(d)(2)(G).

flecting the deliberative process of an administrative agency is protected. The longstanding privilege was judicially created to promote "open, frank discussion between subordinate and chief concerning administrative action." [8] The key question is whether production of the requested documents would be "injurious to the consultative functions of government that the privilege of non-disclosure protects." [9]

Without addressing the applicability of 12 U.S.C. § 1821(h)(3) to the RTC's action here, it is clear that the congressional mandate "to minimize adverse economic effects ... on individual debtors in the community" does not constitute a waiver of the deliberative process privilege.

Defendants may not obtain discovery relative to the propriety of the RTC's decisions under 18 U.S.C. § 1821(h)(3).

## CONCLUSION

For the foregoing reasons, defendants' motion to compel answers to interrogatories and a response to a request for production of documents is DENIED.

---

8. *Kaiser Aluminum & Chemical Corp. v. United States,* 157 F.Supp. 939, 946, 141 Ct.Cl. 38 (1958).

9. *Id.,* 157 F.Supp. at 946. *See also Environmental Protection Agency v. Mink,* 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973).